JOHN D. ATCHISON, Appellee, *vs.* CELESTIA G. McKINNIE *et al.* Appellants.

*Opinion filed February 20, 1908—Rehearing denied April 8, 1908.*

1. TRIAL—*case must go to jury if evidence as to facts is conflicting.* In an action at law where the testimony of the plaintiff and defendant is sharply conflicting but the testimony of each is corroborated by other evidence it is the duty of the trial court to submit the case to the jury.

2. INSTRUCTIONS—*instruction should be considered in its entirety.* An instruction should be considered in its entirety, in the light of the evidence and the subject matter of the suit, and is not to be tested by resolving it into separate clauses and determining the correctness of each, independently of the others.

3. SAME—*when instruction does not assume that drawings were complete.* In assumpsit by an architect to recover on a contract for work done on one set of drawings and on a *quantum meruit* for the value of services rendered in making another set of drawings and in the construction of the building, an instruction purporting to state the law in case the building represented by "the first drawings offered in evidence" was abandoned does not, by using the words quoted, assume that such drawings were complete.

4. APPEALS AND ERRORS—*asking irrelevant questions to embarrass a witness is not proper.* Asking irrelevant questions for the purpose of embarrassing a witness and causing the jury to draw an inference unfavorable to him is not proper practice, but is not available as a ground for reversal where no objection is made nor any ruling of the court obtained with reference thereto.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. W. PINCKNEY, Judge, presiding.

This is an action in assumpsit brought in the circuit court of Cook county by John D. Atchison, plaintiff, against Patterson L. McKinnie, defendant. The declaration alleges that on October 29, 1901, at Chicago, the plaintiff being an architect by occupation and the defendant being about to erect a certain building, defendant entered into a written contract with plaintiff whereby defendant agreed to and did employ plaintiff as an architect; that according to the terms of the contract plaintiff agreed to furnish full professional service, as architect, for defendant, as such service is defined by the American Institute of Architects, in and about the erection of a three-story apartment building which defendant was about to erect in Evanston; that for such services defendant agreed to pay plaintiff the sum of $1200; that it was further agreed that in case the work should be abandoned before completion the plaintiff was to be reimbursed for his labor as follows: For preliminary studies, general drawings, specifications and details, the sum of $1000; that under the terms of this contract plaintiff performed the services under the conditions of the agreement and provided plans, specifications and drawings for such building, as required by the terms of the agreement; that after such plans, specifications and drawings were completed the defendant abandoned the erection of said building and refused to erect the same under such plans, specifications and drawings; that defendant owes plaintiff, under the terms of the written contract, the sum of $1000, and that plaintiff has always been ready and willing, and has offered defendant, to continue to render the services required of him under said contract, but that defendant would not erect said building

under said plans, specifications and drawings but wholly abandoned the same. The declaration also contained the common counts, alleging that defendant owed the plaintiff $3000 for price and value of work and services rendered and performed, as the architect, at defendant's request. To this declaration the general issue was filed, and upon a trial the jury returned a verdict in favor of plaintiff for $2892, from which a *remittitur* of $100 was entered and judgment rendered for $2792. An appeal to the Appellate Court for the First District was perfected and the judgment of the circuit court was there affirmed. While the cause was pending in the Appellate Court McKinnie died and the executors of his will were substituted as appellants. By their further appeal the executors have removed the case to this court.

The litigation grows out of the following state of facts: In the spring of 1901 appellee was requested by McKinnie to prepare sketches for an apartment building to be located on the corner of Hinman avenue and Lee street, Evanston. On the 29th day of October, 1901, the parties entered into a written contract, by which appellee agreed to prepare the plans and drawings for the building then under contemplation and to furnish full professional services, as defined by the American Institute of Architects, for the erection of a three-story apartment building at the south-west corner of Hinman avenue and Lee street, in Evanston, Illinois, for the consideration of $1200, to be paid in installments, as follows: "$500 when working drawings are completed, and the balance from time to time as the work progresses." The contract contained the following clause: "It is agreed that in case the work is abandoned before completion the architect is to be reimbursed for his labor, as follows: for preliminary studies, general drawings, specifications and details, $1000." In pursuance of this contract appellee prepared certain plans or drawings for the building, upon which a permit was secured from the public authorities to erect the building. Before the erection of the building was com-

menced, and while the plans and sketches were incomplete, McKinnie acquired forty feet additional ground adjoining. the lots upon which the proposed building was to be erected. After the additional ground was acquired the plans originally prepared for the 24-apartment building were discarded and appellee was requested by McKinnie to prepare plans, specifications, details and drawings for a 27-apartment building, which McKinnie had decided to construct upon the original site and twenty-four feet of the additional forty feet which he had acquired. The building was constructed in accordance with the second set of drawings, at a cost of about $80,000. The cost of the building for which the first set of plans were drawn was estimated at $60,000.

Appellee contends that he is entitled to recover $1000 "for preliminary studies, general drawings, specifications and details" under the original contract, on the theory that the work had been abandoned before completion, and that he is entitled to recover the reasonable value of his services for making the plans, specifications and details for the building that was in fact constructed, which is fixed by the testimony at three and one-half per cent of the total cost of the building, which is shown to be the usual and customary fees charged in Chicago by architects for this kind of work. Appellee also prepared some drawings for an advertising book for McKinnie, advertising the apartments which had been constructed. For making these drawings the appellee charged $35, while the contention of appellants is that appellee was not to receive any compensation for this work, but was to do it in consideration of having his name appear in the advertising pamphlet as the architect.

CURREY & ALLEN, (C. STUART BEATTIE, of counsel,) for appellants.

ARNOLD TRIPP, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

In the trial court defendant admitted that plaintiff was entitled to a judgment for $157 balance due on the $1200 contract and also $35 for the advertising drawings. At the close of all the evidence defendant requested the court to direct a verdict in favor of plaintiff for $192. This request was refused, and that ruling is here assigned as error by appellants. On the trial defendant contended that all the work performed by plaintiff was under the written contract, and that $1200 was to be in full satisfaction of that contract. This theory was supported by the evidence of Mc-Kinnie, who testified that plaintiff told him that there would be no extra charge by reason of the construction of the 27-apartment building instead of the 24-apartment building originally planned. On the other hand, plaintiff contended that the erection of the original building was abandoned after the additional forty feet of ground had been acquired, and that McKinnie requested the plaintiff to prepare other drawings and specifications for the larger building. Plaintiff testified that the original drawings were wholly worthless, and accordingly he proceeded to prepare new designs, plans and specifications for a 27-apartment building. He testified that during the preparation of the last set of drawings he was in consultation, daily, with McKinnie, and that numerous changes and modifications were made from time to time, until they were finally completed and accepted by McKinnie. The two sets of drawings were introduced in evidence and the trial judge has certified the originals to this court for inspection. It will thus be seen that there was a sharp conflict between the testimony of the two parties to the transaction. The testimony of each party to the transaction was corroborated by other testimony. In this state of the proof the trial court properly submitted the cause to the jury, and no error was committed in refusing the motion for a directed verdict.

It is urged that the court erred in giving the jury the following instruction:

"If the jury believe, from the evidence, that the building represented by the first drawings offered in evidence was never erected and that the work on the building under said first drawings was abandoned, and that the defendant directed and engaged the plaintiff to draw other and different plans, specifications and details for a building larger than represented by the first plans, and that the plaintiff, in accordance with such direction and engagement, did draw other and different plans, specifications and details not contemplated in the written contract, and that no price or sum was mentioned as compensation to which plaintiff should be entitled, then you are instructed that the plaintiff would be entitled to the customary, usual and reasonable fees charged by architects in this community for such work."

One objection pointed out by appellants in their brief to this instruction is, that the first clause of the instruction, which refers to the "first drawings offered in evidence," was "equivalent to a direction by the court to the jury that the so-called first plans were completed, and that they fully represented all the architect was to do concerning the building contemplated in the written contract." This criticism has no merit. There were two sets of drawings in evidence, and they were referred to throughout the trial as the *first* and *second* plans, so as to distinguish them. The first set of drawings was not completed at the time the determination to erect a different building was reached. The language employed in the instruction to which this objection goes does not tell the jury that the plans were complete, nor is such an inference to be drawn from the reference to them as the "first drawings offered in evidence." The word "drawings" means a representation of objects made with a point, such as a pen, pencil or crayon, and may be applied to an incomplete sketch as well as to finished plans. This objection is hypercritical. Appellants urge other objections

to this instruction, which we have considered, but we are unable to agree that the instruction is open to any of the objections made to it.

The method of discussing the instruction pursued by appellants makes it difficult to consider their objections without going too much into a critical analysis of the language of the instruction. Appellants have separated the instruction into different clauses and pointed out their objections to the several clauses. Instructions are to be read as a whole and considered in the light of the evidence and the subject matter of the lawsuit, and are not to be tested by resolving them into their various elements and then attacking each component part separately, as appellants seem to have attempted in this case.

On the cross-examination of Dr. McKinnie, appellee's attorney asked him if he had not been connected with the insurance business and if he had not gone away because the sheriff was after him. No objection was made to this question and no ruling of the court was made and no exception preserved. Asking a question which is not relevant or proper, such as the one put by counsel in this case to McKinnie, merely for the purpose of embarrassing the witness or to cause the jury to draw some unfavorable inferences against the witness, is, in the language of the Appellate Court in this case, "discreditable to the administration of justice." Such practices should not be permitted, and we may well assume that had an objection been made the trial court would have promptly sustained it.

Other questions argued by the appellants are settled adversely to them by the judgment of the Appellate Court.

Finding no reversible error the judgment of the Appellate Court is affirmed.                    *Judgment affirmed.*